MARY ELLEN LUTZ, LEA SHURMATZ,
KRISTIN SCHWARTZ, LINDA SPRING,
and ALEXIA CHRISTODOULIDES,
individually and as representatives of
similarly situated persons, and on behalf of
the Plans,

            Plaintiffs,

       v.

KALEIDA HEATLH, et al.,

            Defendants.
_____

**DECISION AND ORDER**

1:18-CV-01112 EAW

      Plaintiffs bring this action individually and on behalf of the Kaleida Health Savings/Investment 403(b) Plan ("403(b) Plan") and the Kaleida Health Savings/Investment 401(k) Plan ("401(k) Plan") (collectively "Plans"), and all other similarly situated participants and beneficiaries of the Plans against Kaleida Health, the Board of Directors of Kaleida, the Kaleida Health Retirement Plan Committee ("Retirement Committee"), the Kaleida Health Investment Committee ("Investment Committee"), Susan Vallance ("Vallance"), the Director of Employee Benefits, Pension Plans & Payroll at Kaleida Health, and the individuals and entities Defendants delegated fiduciary functions or responsibilities to. Plaintiffs contend Defendants violated the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by

breaching their fiduciary duty by failing to properly minimize the reasonable fees and expenses incurred by the Plans. (*Id.*).

Presently before the Court are a motion to dismiss filed by Defendants on November 29, 2018 (Dkt. 10), and a motion to dismiss and a motion to strike filed by Defendants on March 11, 2019 (Dkt. 16). Familiarity with the relevant facts is assumed for purposes of this Decision and Order. For the following reasons, the Court denies the November 29, 2018, motion (Dkt. 10) as moot, denies the March 11, 2019, motion to dismiss (Dkt. 16), and denies the motion to strike without prejudice (Dkt. 16).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### Motion to Dismiss Initial Complaint

Defendants' first motion to dismiss (Dkt. 10) is denied as moot. After Defendants filed this motion, Plaintiffs filed the Amended Complaint (Dkt. 14), which alleges significantly more facts than the initial complaint (Dkt. 1). "Where Plaintiffs have substantially bolstered their factual allegations through amendments to the complaint, it makes little sense for the Court to assess those claims based on briefing that does not consider the additions." *Given v. Rosette*, No. 15-CV-101-JGM, 2015 WL 5177820, at *1 (D. Vt. Sept. 4, 2015); *see Kolari v. New York–Presbyterian Hosp.*, 455 F.3d 118, 120 n.2 (2d Cir. 2006) (filing of amended complaint subsequent to defendants' motion to dismiss mooted motion to dismiss). Accordingly, the Court denies Defendants' first motion to dismiss (Dkt. 10) as moot.

### Documents Submitted by Defendants

In the second motion to dismiss, Defendants rely on a declaration submitted with their initial motion to dismiss that contains more than 350 pages of exhibits. (Dkt. 10; Dkt. 16-1 at 8). Defendants argue that the Court should consider these documents in rendering its decision on the instant motion because the Amended Complaint either incorporates the documents by reference or heavily relies upon their terms and effect. (Dkt. 16-1 at 8 n.1; Dkt. 23 at 3-4). The Court finds that the Plans' restatements are incorporated by reference, and that it need not determine whether the remainder of these documents are integral to the Amended Complaint because even if the Court did consider these documents, Plaintiffs' claims would survive the instant motion.

### Vallance and the Retirement Committee as Fiduciaries

Plaintiffs seek relief under 29 U.S.C. § 1132(a)(2), which provides that civil actions may be brought "by a participant . . . for appropriate relief under section 1109." Section 1109, in turn, provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan." 29 U.S.C. § 1109. Under these provisions, "plan participants may unquestionably bring actions against plan fiduciaries for breaches of fiduciary duty." *Coan v. Kaufman*, 457 F.3d 250, 257 (2d Cir. 2006).

"To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege facts which, if true, would show that the defendant acted as a fiduciary, breached its fiduciary duty, and thereby caused a loss to the plan at issue." *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 730 (2d Cir. 2013) ("*PBGC*") (citing 29 U.S.C. § 1109(a), and *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000)).

"In every case charging breach of ERISA fiduciary duty, the threshold question is whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 366 (2d Cir. 2014) (alterations omitted) (quoting *Pegram*, 530 U.S. at 226). "Fiduciaries under ERISA are those so named in the plan, or those who exercise fiduciary functions." *In re Citigroup Erisa Litig.*, 104 F. Supp. 3d 599, 613 (S.D.N.Y. 2015), *aff'd*, *Muehlgay v. Citigroup, Inc.*, 649 F. App'x 110 (2d Cir. 2016). ERISA provides:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). "The question of whether one is a functional fiduciary is fact-intensive and the court must accept well-pled allegations as true when ruling on a motion to dismiss." *In re Xerox Corp. ERISA Litig.*, 483 F. Supp. 2d 206, 213 (D. Conn. 2007).

Defendants contend that neither Vallance nor the Retirement Committee are fiduciaries with respect to the alleged conduct at issue. (Dkt. 16-1 at 19-24). The Court denies Defendants' motion on this point and finds that the allegations against Vallance and the Retirement Committee are sufficient.

In the Amended Complaint, Plaintiffs allege that Vallance as Director of Employee Benefits, Pension Plans & Payroll has numerous responsibilities with respect to the Plans, including to "[r]esearch, design, develop, *negotiate*, communicate and implement new or enhanced benefit programs, including retirement and pension plans," and to "[m]anage [the] corporate benefits department, including retirement program areas." (Dkt. 14 at ¶ 70 (emphasis added)). Someone who had the responsibility of negotiating the Plans could very well have played a role in deciding which share class to invest in. Plaintiffs also allege that Vallance signed the Plans' Form 5500s from 2014 to 2017 on the line labeled "signature of plan administrator." (*Id.* at ¶ 66). The Court does not find that these are, as Defendants argue, "bald allegations," but rather statements about Vallance's job

- 5 -

description that sufficiently allege Vallance exercises "discretionary authority or discretionary control respecting management" and/or administration of the Plans, 29 U.S.C. § 1002(21)(A).

Defendants argue that the Plans do not explicitly identify Vallance as an administrator or a fiduciary for the Plans. (Dkt. 10-2 at ¶¶ 3, 6 (citing the Restatements and Summaries); Dkt. 16-1 at 21). "ERISA, however, defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties[.]" *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (citation omitted). Especially in light of the more lenient pleading standard established by the Second Circuit for ERISA cases, *see PBGC*, 712 F.3d at 718 ("[A] claim for a breach of fiduciary duty under ERISA may survive a motion to dismiss—even absent any well-pleaded factual allegations relating directly to the methods employed by the ERISA fiduciary—if the complaint allege[s] facts that, if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident."), the Amended Complaint sufficiently alleges that Vallance has functional control and/or authority over the Plans so as to fall within the scope of an ERISA fiduciary.

The Court is also not persuaded by the cases cited by Defendants. Plaintiffs do not rely on a theory of *respondeat superior* in asserting that Vallance is a fiduciary. *See In re M&T Bank Corp. ERISA Litig.*, No. 16-CV-375 FPG, 2018 WL 4334807, at *3 (W.D.N.Y. Sept. 11, 2018). Nor is it clear from the Amended Complaint that Vallance had no control over investment options. *See Crowley ex rel. Corning, Inc., Inv. Plan v. Corning, Inc.*, 234

F. Supp. 2d 222, 228 (W.D.N.Y. 2002). Accordingly, the Court finds resolution of the issue of Vallance's fiduciary status is inappropriate at this stage of the litigation.

Plaintiffs' allegations regarding the Retirement Committee's status as a fiduciary are also sufficient at this stage of the proceedings. Plaintiffs allege that the Retirement Committee is the Plan Administrator of the Plans, and that it "is responsible for the management and administration of the Plans." (Dkt. 14 at ¶¶ 52-53). The Amended Complaint further alleges that the Retirement Committee "has discretionary authority . . . to fix omissions, to resolve ambiguities regarding the Plans and to construe terms of the Plans," as well as "to approve or disapprove funding vehicles under the plans." (Dkt. 14 at ¶¶ 57-58). Such allegations adequately allege the fiduciary status of the Retirement Committee.

Defendants argue the Retirement Committee should not be considered a fiduciary because the Charter of the Kaleida Health Retirement Plan Committee (the "Charter") "carved out responsibility" for the Plans' funding and oversight of the Plans' investments from being delegated to the Retirement Committee. (Dkt. 16-1 at 22). Defendants' arguments do not persuade the Court; if anything, they create an issue of material fact that would be inappropriate to resolve in a ruling on a motion to dismiss.

Section 1.03 of the Charter states: "The purpose of the [Retirement] Committee is to serve as the plan administrator of the Plans and, as a named fiduciary, to exercise authority and control over the management of the Plans, excluding responsibilities for funding and investment of Plan assets that have been delegated to the [Investment Committee.]" (Dkt. 10-8 at 4). However, the Plans and Plan Summaries name the

Retirement Committee as the Plan Administrator "responsible for the management and administration of the Plan[s] except for those functions that it delegates, in writing to others." (Dkt. 10-3 at 10; Dkt. 10-4 at 9; Dkt. 10-7 at 10). Such a provision indicates that the Retirement Committee was fully responsible for the management and administration of the Plans, at least until the Retirement Committee delegated responsibility. Additionally, at oral argument Plaintiffs brought to the Court's attention, and Defendants did not dispute, that it is not clear at this point whether the Charter was provided to the Plans' participants to notify them of the Investment Committee's fiduciary status, even though disclosure of the identities of fiduciaries to plan participants is one of ERISA's requirements. *See, e.g.*, 29 U.S.C. § 1023(c)(2).

Moreover, while the Charter does delegate the Retirement Committee's "duties and responsibilities regarding the funding of the Plans and oversight of Plan investments" to the Investment Committee, it does not delegate all of the Retirement Committee's administrative and managerial functions. (*Id.*). It is not clear at this point in the litigation that a failure to properly minimize administrative fees falls exclusively within the scope of funding and oversight responsibilities of the Plans that the Charter delegated to the Investment Committee, or that such a claim is not within the scope of the Retirement Committee's other administrative and managerial responsibilities.

Even if Plaintiffs' claim was exclusively related to funding and oversight responsibilities, Department of Labor regulations provide that "[a]t reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance

has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan," 29 C.F.R. § 2509.75-8, and "[a]n appointing fiduciary's duty to monitor his appointees is well-established," *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 477 (S.D.N.Y. 2005) (collecting cases). In other words, even though the Charter does delegate the responsibilities of funding the Plans and oversight of Plan investments from the Retirement Committee to the Investment Committee, it does not relieve the Retirement Committee of its fiduciary duty to monitor the Investment Committee.

Therefore, the Court will not dismiss Vallance or the Retirement Committee at this stage of the litigation.

### Selection and Retention of T. Rowe Price Mutual Funds

Defendants argue the Amended Complaint fails to state a breach of fiduciary duty claim because the retail funds at issue are part of a wide range of options, and the fees associated with those retail funds fall within ranges permitted by the courts. (Dkt. 16-1 at 25). The Court finds the allegations are sufficient for the reasons that follow.

"[A] claim for a breach of fiduciary duty under ERISA may survive a motion to dismiss—even absent any well-pleaded factual allegations relating directly to the methods employed by the ERISA fiduciary—if the complaint allege[s] facts that, if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident." *PBGC*, 712 F.3d at 718 (alteration in original) (quotation omitted). Courts in this Circuit have found allegations that the "defendants breached their fiduciary duties by selecting specific retail funds over lower-cost, but otherwise identical, institutional funds . . . are sufficient to survive the motions to dismiss."

*Cunningham v. Cornell Univ.*, No. 16-CV-6525 (PKC), 2017 WL 4358769, at *8 (S.D.N.Y. Sept. 29, 2017) (citation omitted) (collecting cases); *see M&T Bank Corp.*, 2018 WL 4334807, at *2, *7 (holding allegations that "the Plan failed to use its bargaining power as a large institutional investor to obtain the lowest-cost class of shares available" were sufficient to state a breach of fiduciary duty claim under ERISA); *see also Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 CIV. 9936 (LGS), 2016 WL 5957307, at *6 (S.D.N.Y. Oct. 13, 2016) ("These specific allegations regarding excessive fees from which Defendants stood to gain is sufficient to support the inference that the process used by the defendants who were Plan fiduciaries to select and maintain the Plan's investment options was "tainted by failure of effort, competence, or loyalty.").

*In re M&T Bank Corporation ERISA Litigation*, 2018 WL 4334807, is instructive. There, the plaintiffs alleged that the defendants "had the opportunity to switch from more expensive fee share classes . . . to lower fee share classes" for several investment options, including T. Rowe Price funds. *Id.* at *7. The court found the plaintiffs did "not have actual knowledge of Defendants' decision-making processes in selecting investment options for the plan, nor need they possess such knowledge." *Id.* Instead, it was "sufficient for Plaintiffs to allege 'facts that, if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident.'" *Id.* (quoting *PBGC*, 712 F.3d at 718).

Similarly, Plaintiffs' allegations are sufficient to state a breach of fiduciary duty claim. Plaintiffs allege that the same shares are available to Defendants without any 12b-1 fees, and that Defendants breached their fiduciary duty by instead choosing share class

options that cause the Plans to pay any amount of fees. (Dkt. 14 at ¶ 123). The Court finds that, in light of the case law discussed above, it "may reasonably infer from what is alleged that [Defendants'] process was flawed." *PBGC*, 712 F.3d at 718 (quotation omitted).

Defendants cite several Seventh Circuit cases to support their argument that the investments were prudent because they offered a wide range of options with fee levels found reasonable by other courts. (Dkt. 16-1 at 25). However, these cases differ factually from the conduct alleged by Plaintiffs because they concern plaintiffs who found some other fund on the market that had a lower fee, not a different category of share class within the same fund. The Seventh Circuit cases emphasize that "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund," *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009), and that "some share classes are more expensive than others, but the cheapest option may not inevitably be the best option," because more services may be available with the more expensive funds. *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 912 (7th Cir. 2013). In contrast, here, Plaintiffs do not allege that some other fund had a lower fee; they allege that the *same funds* offer an investor share class without the 12b-1 fees if there are enough people instead of the retail share class with the 12b-1 fees, and that the funds are exactly the same in all other respects. The allegations in the Amended Complaint do not support that Defendants would have to "scour the market" to find and offer these identical funds. Additionally, if the investor and retail share classes are identical in all respects except for the fee as Plaintiffs allege, then the Seventh Circuit's concern about the cheapest option not necessarily being the best bears no weight.

Because Plaintiffs have alleged that "the only consequence was higher costs for the Plans' participants," their claims are sufficient to survive a motion to dismiss. "While it may turn out that [D]efendants had legitimate and prudent reasons for making the challenged investments available to participants," or that the retail and investment share classes were not truly identical, "accepting the Complaint's allegations as true and drawing all reasonable inferences in favor of the [P]laintiffs, [P]laintiffs' allegations are sufficient, at this stage, to survive a motion to dismiss." *Cunningham*, 2017 WL 4358769, at *8.

### Generic Allegations

Defendants argue that the Amended Complaint contains only generic allegations and is devoid of any factual details (Dkt. 16-1 at 26-27), and that Plaintiffs' request discovery without explaining how or why the information is critical to supporting the Amended Complaint or why they do not already have the information (Dkt. 23 at 7). The Court is unpersuaded by these arguments.

The Second Circuit has found that "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences," and accordingly an omission in the complaint of the fiduciary's "knowledge, methods, or investigations at the relevant times. . . . is not fatal to a claim alleging a breach of fiduciary duty." *PBGC*, 712 F.3d at 718. Instead, "a claim for a breach of fiduciary duty under ERISA may survive a motion to dismiss . . . if the complaint alleges facts that, if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident." *Id.* (original alteration and quotation omitted); *see Moreno*, 2016 WL 5957307, at *6 (holding an ERISA claim for

breach of fiduciary duty survives if based on "circumstantial factual allegations" the "process was flawed"); *Cunningham*, 2017 WL 4358769, at *12 (same). As discussed above, the Court finds Plaintiffs' allegations sufficiently state a breach of fiduciary duty claim. Accordingly, the Court will not grant Defendants' motion on this basis.

### Breach of Duty to Monitor and for Co-Fiduciary Liability Claim

Defendants argue that the claim for breach of the fiduciary duty to monitor and for co-fiduciary liability must fail because the Amended Complaint fails to state any claim for breach of fiduciary duty by any Defendants. (Dkt. 16-1 at 28). As previously discussed, "[a]n appointing fiduciary's duty to monitor his appointees is well-established," *Polaroid*, 362 F. Supp. 2d at 477, and because the Court finds Plaintiffs' allegations sufficiently state a claim for breach of fiduciary duty, Defendants' motion is denied as to these claims.

### Statute of Limitations

Defendants also assert that the statute of limitations has run on Plaintiffs' claims. (Dkt. 16-1 at 29-32). Defendants contend that the statute of limitations in this case was contractually shortened to two years and that Plaintiffs failed to file the instant lawsuit within the limitations period. The Court does not determine whether the Plans contractually shortened the statute of limitations because it finds that even if the contractual limitations period applies, Defendants have not met their burden of showing that the instant cause of action is time barred.

"The lapse of a limitations period is an affirmative defense that a defendant must plead and prove." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir.

2008). "[A] defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Id.*

The Second Circuit has held that for the statute of limitations to begin to run under ERISA § 1113, "it is not enough that [plaintiffs] had notice that something was awry; [plaintiffs] must have had specific knowledge of the actual breach of duty upon which [they sued]." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001) (alterations in original) (quotation omitted); *see Leber v. Citigroup 401(k) Plan Inv. Comm.*, No. 07-Cv-9329 (SHS), 2014 WL 4851816, at *3 (S.D.N.Y. Sept. 30, 2014) ("Even where a plaintiff has reason to believe that defendants have violated ERISA, he might not know all the facts material to his claim. . . . Clearly what matters are the facts plaintiffs possess, not the facts they suspect or could discover.").

Defendants have not shown that Plaintiffs had knowledge two years before they filed their lawsuit, *i.e.*, before October 11, 2016, of the investor class shares upon which their claims rely. While Defendants argue that fee disclosures from as early as 2012 put Plaintiffs on notice about the fees and expenses for the T. Rowe Price Funds and that they were higher than the other funds offered by the Plans (Dkt. 16-1 at 30-31), that is not sufficient. The Plans and fee disclosures do not disclose the existence of investor class shares with no 12b-1 fees, and "Plaintiffs could not have known that the fees were excessive, and thus a basis for an ERISA claim, without the relevant comparison point for assessing excessiveness: fees for comparable funds." *Leber*, 2014 WL 4851816, at *4; *see Moreno*, 2016 WL 5957307, at *4 (denying the motion to dismiss based on the statute of limitations because "the Complaint explicitly alleges that Plaintiffs did not have knowledge

of the comparison of Plan costs and investment performance versus other available alternatives, comparison to other similarly-sized plans, information regarding other available share classes, and information regarding separate and collective trusts until shortly before this suit was filed. . . . Defendants have not shown that it is clear from the face of the Complaint or any judicially noticed court filings that Plaintiffs actually knew of the fee or performance data for the comparable alternative funds more than three years before the commencement of this suit" (quotations, citation, and footnote omitted)).

The case relied on by Defendants, *Young v. General Motors Investment Management Corporation*, 550 F. Supp. 2d 416 (S.D.N.Y. 2008), *aff'd*, 325 F. App'x 31 (2d Cir. 2009), is not dispositive. The *Young* court noted "this Circuit has focused on whether the documents provided to plan participants sufficiently disclosed the alleged breach of fiduciary duty, not whether individual Plaintiffs actually saw or read the documents." *Id.* at 419 n.3. In the instant matter, Plaintiffs do not allege that the investor class shares with no 12b-1 fees were disclosed in the Plans and that they did not see or read them; rather, they allege the Plans did not disclose the existence of investor class shares free of 12b-1 fees.

Accordingly, Defendants have not met their burden of showing that the limitations period started running prior to October 11, 2016, and the Court rejects the statute of limitations defense, at least at this stage of the litigation.

### Motion to Strike Jury Demand

Defendants also move to strike Plaintiffs' jury demand because they argue the only relief sought by Plaintiffs is equitable in nature. (Dkt. 16-1 at 32; Dkt. 23 at 9-10). The

law surrounding jury trials in ERISA cases is complex. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) ("The kind of restitution that petitioners seek, therefore, is not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that they conferred upon respondents."); *Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*, No. 3:11-CV-282 (JCH), 2012 WL 162361, at *5 (D. Conn. Jan. 19, 2012) ("*Great-West* reconfigured the legal landscape of restitution, and has been interpreted to permit jury trials on ERISA claims when such claims are legal rather than equitable in nature." (quotations and citation omitted)). Defendants have not identified any prejudice that would result from allowing the jury demand to remain at this stage of the litigation. Accordingly, given the complex nature of the issue and the lack of prejudice to Defendants, the Court declines to resolve the motion to strike, and instead denies Defendants' motion without prejudice. *See Taupita Inv., Ltd. v. Benny Ping Wing Leung*, No. 14 Civ. 9739 (PAE), 2017 WL 3600422, at *13 (S.D.N.Y. Aug. 17, 2017) ("[T]his issue is better resolved following discovery and resolution of any motions for summary judgment. . . . The Court accordingly denies the motion to strike plaintiffs' jury demand without prejudice[.]"); *see also Sullivan*, 82 F.3d at 1257 (ruling on a "previously adjourned" motion to strike after ruling on a motion for summary judgment).

**Conclusion**

For the foregoing reasons, Defendants' motions to dismiss (Dkt. 10; Dkt. 16) are denied, and Defendants' motion to strike (Dkt. 16) is denied without prejudice.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: August 5, 2019
       Rochester, New York