UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARY ELLEN LUTZ, et al.,

                          Plaintiffs,

v.

KALEIDA HEALTH, et al.,

                          Defendants.
_____

**DECISION AND ORDER**

**Case No. 1:18-cv-1112-EAW-JJM**

        This is a purported ERISA class action in which plaintiffs, "individually and on behalf the Kaleida Health Savings/Investment 403(b) and 401(k) Plans . . . and all other similarly situated participants and beneficiaries of the Plans", seek injunctive and compensatory relief for defendants' alleged mismanagement of the Plans. First Amended Class Action Complaint [14].[1] Before the court are defendants' motions to strike the Amended Expert Witness Report and Rebuttal Report of plaintiffs' expert witness, James M. Garber [82, 91].

        Familiarity with the relevant facts is presumed. Having reviewed the parties' submissions [82, 91, 93, 94, 97, 102, 103, 109] and heard oral argument on November 2, 2022 [120], for the following reasons, both motions are granted.[2]

---

[1]    Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

[2]    The motions are nondispositive. Dreyer v. Ryder Automotive Carrier Group, Inc., 367 F. Supp. 2d 413, 415 (W.D.N.Y. 2005).

## DISCUSSION

A.  **Sufficiency of Garber's Reports**

"Rule 26 of the Federal Rules of Civil Procedure allows a party to submit a rebuttal expert report if it is 'intended solely to contradict or rebut evidence on the same subject matter identified by another' expert." Garber's Memorandum of Law [94] at 9, *quoting* Fed. R. Civ. P. ("Rule") 26(a)(2)(D)(ii). However, as outlined in his Affirmation [94-1], Garber's Rebuttal Report [91-2] does not "solely" contradict or rebut defendants' experts. Instead, it also offers numerous corrections to his previous Report:

¶4: "In my Opening Report, I inadvertently used the total assets as of December 31, 2011, instead of December 31, 2012. The figure in the Rebuttal Report uses the figure for December 31, 2012."

¶5: "With respect to the figure for 2013 total assets, in my Opening Report, I had not identified data for 2013, so I took the average of what I used for total net assets for 2012 and 2013. In drafting my Rebuttal Report, I had located the data for 2013 and thus updated this figure to improve accuracy."

¶6: "[I]n my Opening Report I inadvertently excluded the assets within the Vanguard Small Cap Index Fund (VSCIX), inadvertently included the incorrect figure for assets held in the Vanguard Mid-Cap Index Fund (VIMAX), inadvertently included the incorrect figure for assets held in the Baird Aggregate Bond Fund (BAGIX), and inadvertently included the incorrect figure for assets held in the T. Rowe Price Retirement 2030 fund (PARCX). The figure in the Rebuttal Report includes the correct assets within those funds for 2019."

¶8: "[I]n my Opening Report I inadvertently excluded assets held in plan loans, inadvertently included the incorrect figures for the Lincoln Fixed Annuity - NO3 and N03A, and inadvertently included the incorrect figure for the State Street Russel Small/Mid Cap Index SL. The figures in the Rebuttal Report includes the correct assets within those funds for 2020."

¶11: "[I]n my Opening Report I inadvertently excluded the American Growth Fund of America (AGTHX). This fund was included in the total assets held in funds within 12b-1 fees for 2016 and 2017 in my Rebuttal Report."

¶13: "[I]n my Opening Report I inadvertently included the assets in the Lincoln Fixed Annuity N03A, and inadvertently excluded the assets in the Dodge and Cox Fund (DODGX) and American Funds Europacific Growth Fund (AEPGX). These figures have been corrected in the Rebuttal Report."

¶15: "[I]n addition to the changes to dates discussed above, I corrected my calculations."

¶16: "[A]s a result of an error, the incorrect figures for the total damages before lost earnings were inadvertently inputted into my calculation. This error has been corrected in the Rebuttal Report."

"[T]he plaintiffs exhibit a fundamental lack of understanding of the purpose of a rebuttal report, which is to rebut the opposing party's expert's report . . . . A rebuttal report is *not* a supplemental report used to supplement opinions or provide additional information that should have been disclosed in the original report." Raab v. Wendel, 2019 WL 13155219, *3 (E.D. Wis. 2019) (emphasis in original). "[R]ebuttal expert testimony . . . is not an opportunity for the correction of any oversights in the plaintiff's case in chief". Securities & Exchange Commission v. McGinnis, 2019 WL 13172404, *15, n. 18 (D. Vt. 2019). *See also* Cooper Tire & Rubber Co.

v. Farese, 2008 WL 5104745, *2 (N.D. Miss. 2008) ("Cooper Tire is attempting to interject a new calculation of damages through a procedural back door by labeling Hosfield's report a rebuttal report").

Plaintiffs argue in the alternative that if "Garber's damage/loss calculations are not proper rebuttal evidence . . . the calculations are a proper supplementation under Rule 26(e)". Plaintiffs' Memorandum of Law [94] at 12. However, "if an expert's report does not rely on any information that was previously unknown or unavailable to him, it is not an appropriate supplemental report under Rule 26." Advanced Analytics, Inc. v. Citigroup Global Markets, Inc., 301 F.R.D. 31, 40 (S.D.N.Y.), adopted, 301 F.R.D. 47 (S.D.N.Y. 2014); Securities & Exchange Commission, 2019 WL 13172404, *14 ("an expert's report that does not rely on any information that was previously unknown or unavailable to him, should not be considered a supplemental report").

Moreover, both the Amended and Rebuttal Reports fail to contain "a complete statement of all opinions the witness will express and reasons for them" and "the facts or data considered by the witness in forming them", as required by Rule 26(a)(2)(B)(i)-(ii). For example, Garber states that "a few historical returns used in my Opening Report were corrected for accuracy in the calculations in my Rebuttal Report" (Garber Affidavit [94-1], ¶17), but does not identify those returns or explain how or why they were corrected. "As a result, it is impossible for Defendants to discern on what basis Mr. Garber formed his initial 'lost earnings' opinions in the Garber Report, or the basis on which Mr. Garber changed his 'lost earnings' opinions in the Rebuttal Report." Defendants' Reply Memorandum [102-3] at 10.[3]

---

[3] As another example, Garber's Amended Report states that "[s]ince there was no data for 2012, 2013 data for comparable companies was used" ([82-11] at 25), but does not identify the data or comparable companies.

Plaintiffs suggest that "[a] failure to disclose can be considered harmless, so long as the opposing party has an opportunity to depose the witness before trial". Plaintiffs' Memorandum of Law [94] at 11. However, "Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony. The purpose of Rule 26(a)(2) is to provide notice to opposing counsel - before the deposition - as to what the expert witness will testify . . . and this purpose would be completely undermined if parties were allowed to cure deficient reports with later deposition testimony. Allowing parties to cure a deficient report with later depositions would further undermine a primary goal of Rule 26(a)(2): to shorten or decrease the need for expert depositions." Baker v. Anschutz Exploration Corp., 68 F. Supp.3d 368, 382 (W.D.N.Y. 2014). *See also* Blidy v. Global Rental Co., 2009 WL 10726320, *4 (W.D.N.Y. 2009) ("defendants have been prejudiced in that they have been deprived of the information to which they are entitled in an expert report, which would enable them to decide whether a deposition of plaintiff's expert was necessary, and, if so, to prepare for that deposition. They should not be forced to depose the expert in order to avoid ambush at trial").

B.   **Reliability of Garber's Opinions**

Fed. R. Evid. 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case".[4]

---

[4] "Rule 702 has been amended in response to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)." Rule 702 Advisory Committee Notes (2000 Amendments).

"[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007). Because "all four of the Rule 702 factors are required for expert testimony to be admissible", AAA Fire Protection, Inc. v. Orison Marketing, LLC, 2019 WL 13195249, *5 (D. Colo. 2019), the "failure on any prong is fatal to admissibility". Cage v. City of Chicago, 979 F. Supp. 2d 787, 799 (N.D. Ill. 2013).

Plaintiffs initially suggest that it is premature to consider the viability of Garber's opinions "until defendants' request to strike plaintiffs' jury demand has been decided". Plaintiffs' Memorandum of Law [93], Point I. However, that request has already been denied, albeit without prejudice (August 5, 2019 Decision and Order [28] at 16), and has not (yet, at least) been renewed. In any event, Rule 702 "imposes the same requirements as to an expert witness regardless of whether the trial is a jury trial or a bench trial". Vellali v. Yale University, 2021 WL 9456194, *1 (D. Conn. 2021). "Although a court has general discretion to hear expert testimony and reserve on a Daubert motion until the conclusion of a bench trial, it still must perform a Rule 702 and Daubert analysis before it relies upon expert testimony." Town & Country Linen Corp. v. Ingenious Designs LLC, 2022 WL 1515120, *5 (S.D.N.Y. 2022).

"[A] district court has broad discretion to decide how to determine reliability of proposed expert testimony." United States v. Napout, 963 F.3d 163, 188 (2d Cir. 2020). Because "the gatekeeping inquiry must be tied to the facts of a particular case", Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999), "[t]he question is whether the testimony can be trusted to be accurate and correct in the case at hand". 3 Mueller and Kirkpatrick, Federal Evidence, §7:10 (4th ed.).

---

Garber's reports create serious doubts as to whether his opinions can be trusted in this case. To begin with, although he purported to state his opinions "to a reasonable degree of profession certainty", he then "reserve[d] the right to modify [them] as necessary" ([82-11] at 27), and proceeded to do just that. While plaintiffs suggest that Garber "was simply correcting honest mistakes in the underlying data" (plaintiffs' Memorandum of Law [94] at 13-14), the number of those mistakes leads me to question whether he has employed "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field", Kumho Tire, 526 U.S. at 152, and been "as careful as he would be in his regular professional work outside his paid litigation consulting". Sheehan v. Daily Racing Form, Inc., 104 F.3d 940, 942 (7th Cir. 1997). For example, in his Affidavit explaining his mistakes [94-1], Garber uses the word "inadvertently" twelve times. I take "inadvertently" to mean "without due attention or thought; inattentively, heedlessly, carelessly". Oxford English Dictionary (www.oed.com).

"If it were a question of one error . . . it is perhaps possible that [the] expert opinion could survive analysis. However, the flaws here are simply too pervasive." Earley Information Science, Inc. v. Omega Engineering, Inc., 575 F. Supp. 3d 242, 250 (D. Mass. 2021); E.E.O.C. v. Freeman, 778 F.3d 463, 467-68 (4th Cir. 2015) ("[t]he sheer number of mistakes and omissions in [the] analysis renders it outside the range where experts might reasonably differ").

While plaintiffs suggest that "none of [Garber's] corrections have any bearing on the underlying methodology" (plaintiffs' Memorandum of Law [94] at 15), "any step that renders the analysis unreliable under the Daubert factors renders the expert's testimony inadmissible". Amorgianos v. National Railroad Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002). "This is true whether the step completely changes a reliable methodology or merely misapplies that

methodology." In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 745 (3d Cir. 1994).[5]

Therefore, "even if the expert employs reliable general principles developed by reliable methods, evidence may be excluded under Rule 702(d) if the specific application of those principles to the facts of the case is suspect." 29 Wright & Miller, Federal Practice and Procedure (Evidence), §6268.2 (2d ed.). *See* Amorgianos, 303 F.3d at 269 ("Caravanos's opinion . . . fail[ed] to apply his stated methodology reliably to the facts of the case . . . . Accordingly, the district court's exclusion of Caravanos's testimony . . . was not an abuse of discretion").

In light of the defects in Garber's damage projections, I need not decide whether his opinion is reliable in other respects. *See* In re Pfizer Inc. Securities Litigation, 819 F.3d 642, 665 (2d Cir. 2016) ("district courts are not obligated to prune away all of the problematic elements of an expert's proposed testimony to save the remaining portions").

## CONCLUSION

For these reasons, defendants' motions to strike [82, 91] are granted.

Dated: November 8, 2022

*[signature]*
JEREMIAH J. MCCARTHY
United States Magistrate Judge

---

[5] Moreover, as defendants point out (defendants' Memorandum of Law [91-3], Point I) the damages projected in Garber's Rebuttal Report are materially different from those projected in his Amended Report. *Compare* Amended Report ([82-11] at 25, listing "Total Damages/Losses" in four categories) *with* Rebuttal Report [91-2] at 27 ("Damages Area One"), 28 ("Damages Area Two"), 29 ("Damages Area Three"), and 30 ("Damages Area Four").